Case number 09-3188, Peoples v. Rumsfeld, Douglas. Okay, lawyers who can argue that case, please approach and introduce yourselves to the court. Morning, I'm Grace Palacio from the State Appellate Defender. Morning, Your Honor. I'm still Grace Palacio. Okay, the appellant knows you have to reserve some of your time, okay, for rebuttal. Okay, let's proceed. You know, in this case, Robert Cahill is also a member of this panel, but he will not be able to be here today, but he will certainly listen to the tapes. May it please the court, my name is Grace Palacio and I represent the defendant, Ron Chan Douglas. The question before this court today is whether Douglas has presented an arguable claim of ineffective assistance of counsel. Sufficient to advance to the second stage of post-conviction proceedings. If I may, I'd like to reserve two minutes for rebuttal. At the first stage, a defendant need only allege the gist of a meritorious constitutional claim. This is a very low threshold. That's, that's, the gist is no longer a standard that we use for the courts. It's certainly a good characterization for the defendants to rely on, and maybe counsel on behalf of defendants, but it's an arguable claim. Right, it's an arguable claim. So, meaning that the petition may not be indisputably meritless, or it can't be based on fanciful allegations, meaning that they can't be fantastical or delusional. Here, Douglas alleges that counsel was ineffective for failing to call Erin Wells as a witness, which would have undermined the testimony of the state's eyewitness, Thomas Brewer, and corroborated the defense theory that Brewer did not see the shooting. So, let's, let's, let's look at that first allegation. Okay. Is there a case out there that says the mere, I hate to put it in this term, pejoratively, but merely undermining witnesses, the testimony of witnesses that actually testified at trial, is sufficient to establish a gist of a constitutional claim? Undermining, because undermining seems to be, doesn't require much of anything. Well, she undermines it, and she refutes it in the sense that he says that he saw the offense, and she says that he has always maintained that he did not. And in, I believe it is... Would you, would you, would you concede that it would be different if she were a witness, and she saw things differently than he testified to? But here, she is simply saying that the witness told her, I was with them, we were all together, I hear shooting, I look out, and I think it must have been the defendant who did the shooting, because we were all together. But he also said that initially, that was his initial statement to the police, was I didn't see it, I only heard it. So that undermines, it corroborates, and as was held... So right there you have an admission by the witness who, or at least you have statements by the witness consistent with what this other witness would have testified to. He's already told the police that I didn't see anything. That's before the jury already. But he is, he also testifies, you know, I took it back, I was afraid, and that is why I initially gave this different version. I believed it's street justice, I thought this might harm me, I certainly thought it might harm my kids. And Aaron Wells, as the mother of his children, said, you know, that is actually not the case.  Let me ask you this. Isn't that what a father would always tell the mother of their kids? No, the kids were never really in danger, when he himself is really thinking, there's a possibility that something could have happened to my kids, but I'm not going to tell that to the mother of the kids, I'm simply going to give her the best possible version. Well, I think then, because it's his first stage, I think that would be something that we would need to develop, and that's why we would need Aaron Wells to come before the court and explain, what is the context of these things that Thomas Brewer has been telling you? How soon after did he say these things? How do you know that that was actually the truth? We're just looking for an arguable basis here, and I think we can argue, yes, here, this would have undermined Thomas Brewer's testimony. Certainly the jury had trouble with the witnesses before the court. How often do you think that sort of scenario that you've just laid out for us could happen in a criminal case? It seems to me that that sort of thing could happen innumerable times, and that means that everyone who has a situation like that would have a right to go forward to the second stage on a post-conviction petition, and that seems to be contrary to what post-conviction petitions are really meant to address. I don't think it's contrary to the threshold that we've laid out, that it only needs to be arguable, that it only needs to not be fantastic. It just needs not be delusional. It's arguable in the sense that it could have made a difference at trial. I'm not sure that this person, had she testified at trial, basically confirming that just as he told the police he didn't see it, she confirms that, she corroborates that, I'm not sure that that would have made any difference. So it's not arguable in that sense. I don't know that we can be sure, but at the same time, we know for sure that the jury had something, there was something about this case that truly bothered the jury. There was something about the state's witnesses that they had a hard time believing. They couldn't come to a unanimous decision on the first day. They got sent home. They came back the next day. They were still not unanimous. They got sent back again. Was there a polling of the jury? Do you recall? I don't recall that there was a polling. Well, we certainly know that it was unanimous at the end. It was unanimous at the end, but it took… And in all likelihood, if things went according to the way things normally do in criminal courts, there is a polling because the defendant wants each and every juror to be asked, is this your verdict now and before? And everybody says yes. That's why… Right. But I think the problem is that we can't say what would have turned the jury one way or the other, and we just need to have it be arguable that it could have had an effect on the way the jurors viewed the witnesses. They obviously had a problem with Thomas Brewer's testimony. They obviously had a problem with David Butler because these are your two occurrence witnesses, and the jury still had a hard time coming to a verdict ultimately. So that's the witness issue. Is that your strongest issue? I don't like to order mine as strongest or weakest, but yes, that's the first one I'm putting before you. Would you like me to move on to the second? Yes. Moving to the second issue, Douglas also alleges that counsel failed to consult with him about his arrest, and therefore she did not discover that he immediately invoked his right to counsel when he was arrested, and therefore she did not know to move to preclude testimony about statements or responses he may have made to police questioning after he was arrested. Now, that's the real issue I have a problem with because it seems to me that if between the two individuals they're talking, at some point they had to have been talking, the defendant and his lawyer, the one that knows what happened at the time of his arrest is only the defendant. And I don't know that the defendant should say, my lawyer was ineffective because he didn't ask me the right questions so that I could have told him about what really happened. It seems to me that the defendant should have told his lawyer what really happened without being asked. But isn't that your claim, that inadequate questioning of the defendant by his lawyer? The claim is inadequate investigation, inadequate finding out the circumstances of the arrest. Well, how would he find this out? By talking to her client. And he includes affidavits from people who would have said, yes, we know that he invoked his right to counsel because the cab driver was present. The cab driver contacted the mother. That is the key, isn't it? And we're looking for an affidavit from the cab driver who apparently had quite a bit of contact with his mother, spoke to his mother, spoke to, I forget if it was another relative or another relative at the home. In fact, I thought the allegation was that the cab driver actually went to the home to get payment for the cab fare, which would seem to me that he would be an important person to get an affidavit from. And without that affidavit, as the trial judge said, it's all hearsay. But I think the argument is that counsel did not investigate. And so we don't know whether trial counsel would have been able to locate this cab driver or just even get the framework of what happened at the time of the arrest. Do we know whether the trial would be any different the second time around if that cab driver was not located since his conviction? No, we don't. But what we do know is that had counsel known that defendant had invoked his right to counsel immediately, then any kind of answers to police questioning that defendant may or may not have made, there was a basis on which counsel could have argued that that doesn't come into evidence. Anything he may have said after he was arrested and invoked his right to counsel should not have been brought before the jury. Does it strike you as a little unusual for a defendant who is sophisticated enough upon being approached by the police, tells the police, I am invoking my right to counsel, and yet when he's talking to his own attorney regarding what his case is all about, he ignores, he avoids, he doesn't say anything about his invocation of his right to counsel. It seems to me that this defendant, if he were really as sophisticated as he tries to claim himself to be by invoking his right to counsel immediately upon being approached by the arresting officers, that he'd have the presence of mind to say that to his lawyer. But he didn't. I don't think you can assume that about a pro se defendant. Because if you look at his petition, and it's lengthy and it's convoluted and kind of confusing, on the one hand he says that he said, I want a lawyer. And so that's his invocation of right to counsel. But then clearly he is uneducated in the law because he confuses something like a formal inculpatory statement with just very simple responses to police questioning. Had he been as educated or knowledgeable? Let's get to the crux of the case, because you don't have much time left. What's the defense in this case? The defense in this case was that these eyewitnesses were not to be believed. This is an inexplicable offense, and we don't know what happened. And there's something about the testimony of these eyewitnesses that is unbelievable. David Butler was shown to have inconsistencies. Thomas Brewer was said to have inconsistencies. And clearly the jury had a problem with that. But the problem also is that the defendant did not testify on his behalf. So to bring in these statements that he may have made, where he shakes his head and laughs, or he supposedly says that he doesn't know anything about this person, he's never been in this area, this paints him as a liar to the jury. And it's a credibility determination. And all they have is this testimony from state witnesses that they clearly have a problem with. And what you have about the defendant are just these very general statements that paint him as this person, someone who lies. And because these statements could have been challenged, then they could have had an effect on the jury's ultimate decision. That's what the problem is. And surely it's arguable. Had counsel known about this, had she made motions that, you know, we can't let these statements in, then maybe the jury could have been swayed one way or the other. It's arguable. Let me ask you this. Do you think the cab driver would have been necessary to be present as a witness at the suppression hearing? I don't know the cab driver would have needed to be present. But the point is that counsel did not know about exactly when the invocation of counsel happened and, therefore, did not know that she could move to preclude these answers to police questioning. Okay. Why don't you save some time for your rebuttal? Yes. You can wrap up. Okay. To conclude, the trial court erred when it summarily dismissed Ronchon Douglas' post-conviction petition. Because Douglas' allegations are supported by affidavits and not rebutted by the record, and when taken as true, which must be done at this point in the proceedings, presented an arguable basis of a constitutional claim. The amendment is required for second stage proceedings and the appointment of counsel. Thank you. Good morning. Can you please support Joan Fraser on behalf of the people? If I could take the claim that was just discussed and address that first. In Hodges, the Illinois Supreme Court said that a petition can be dismissed at the first stage if it's based on an indisputably meritless legal theory. That's what this case is. Indisputably. What's the theory that you find so frivolous? Well, there's two, actually. Well, they're both. Whichever one you want to start with. Let me start with the first one, if I may. It's frivolous on a number of counts. First of all, it's been forfeited, because the claim the defendant raises on appeal is not the same claim that he raised in his petition. In his petition, he said, my attorney should have filed a motion to suppress statements I never made. And now on appeal, his claim is my attorney should have filed a motion to suppress statements that I did make. So it's not clear whether he made them or not. I don't know if he needs to concede that he did make those statements, and I'm not even sure that he did concede that he made those statements. In counsel's presentation, I think she's arguing that any statements that he had allegedly made were subject to suppression if he had invoked his right to counsel. So what is shared between what he alleged in his petition and what is alleged here in his brief is that he had a right to file a motion to suppress. And if the Supreme Court standard is a very low standard to get to the second stage, why hasn't he met that standard in this case? Well, because I cite People v. Petrenko, which is an Illinois Supreme Court case, and there the defendant claimed in his post-conviction petition that his attorney was ineffective for failing to find out that an officer who filed an affidavit for a search warrant failed to say the defendant had been in the victim's home five days earlier. On appeal, he raised a new claim. His attorney was ineffective because he didn't say in the affidavit mail was found in the victim's home and it was old mail. The point is, in both cases, the defendant was attacking the ineffective systems of counsel based on what the officer put in the search warrant. But the particulars were different. And the Illinois Supreme Court found that that was sufficient to call the second claim different. Now, you have the same two claims in that case, both in the petition and on appeal, just like here. Motion to suppress statement was raised in the petition and on appeal, but the particulars are different. And in this case, they're not just different, they're diametrically opposed. They were just details of Petrenko, and the Illinois Supreme Court found that was sufficient to find that the defendant forfeited the claim because they were different. Here, the defendant, that's a major difference to say, I didn't make the statements, and then, all right, I did make the statements, but they should have been suppressed. Under Petrenko, that's forfeiture. So it's forfeiture. Well, isn't the don't counsel on appeal serve much like counsel at the second stage, where they get a pleading prepared by a pro se defendant, and then they try to put it in a good form for consideration by the trial judge? And so why isn't counsel acting in the sense, in that manner, by taking threads of what he alleged and finding a valid issue that should be addressed by this court? Because forfeiture, I think, is something we try to avoid. Let's go on to the merits. Yes, sir. But just to answer that question, a counsel on appeal is not entitled to change the substantive merit of the pro se petition, period. But can't she just take it in the most favorable light? No, that's not the standard that applies. And there is a difference, or what counsel has alleged on appeal is that the court should interpret the petition very liberally. And there is a difference, or there should be a difference, between assessing a petition to determine if, give it a liberal construction to determine if a gist of a claim has been raised, versus looking at it procedurally to see whether a claim has been raised in the petition. It's the same or different as one raised on appeal. Moving on to the merits. The claim is legally meritless that there was ineffective assistance of counsel here. As the court mentioned earlier, how was the attorney supposed to know the defendant supposedly invoked counsel? There's no mention of it whatsoever at trial. In the case of English, which I cite, the defendant claimed that his counsel was ineffective for failing to investigate his alibi defense. But no one, including the defendant, ever came forward to tell the attorney about the alibi. So the court found that the attorney was not deficient. As the court knows, even if defense counsel had known of the statements the defendant made or didn't make, the decision whether to file a motion to suppress is a tactical decision normally protected by Strickland. Even if defense counsel had filed a motion to suppress, it would not have been granted. You've got the affidavit of Gaynette Hoskins who would say, according to her affidavit, that the cab driver told her that he heard the defendant invoke his right to counsel. That's not just hearsay. It's double hearsay. You've got the affidavit of Willia Douglas. Well, hearsay is admissible in a suppression hearing, isn't it? I'm sorry? Hearsay is admissible in a suppression hearing. Well, it goes to the weight of it. Even if it's admissible or not, it certainly goes to the weight. And you've got Willia Douglas who would offer a triple hearsay. She would have said, Gaynette Hoskins told me that the cab driver told her that he heard defendant invoke his right to counsel. That's triple hearsay. And then you have defendant's claim that even though, and he maintains this even in his affidavit to his petition, that he never made a statement. And he says he told counsel that he wanted an attorney, but on the other hand, he never made a statement. A defendant can't show prejudice either because even if the statements at issue on appeal had not come in, the evidence of his guilt was absolutely indisputable. What are we talking about here? The statement that he said to police when they stopped him, oh, my name is Cortez Forrest. Now, that is really, that pales in significance to the weight of the evidence. You've got Brewer's testimony. The jurors knew all about the conflicts. He explained them completely. And they all knew the defendant for a long time? Yes. There was no question about identification. You had Butler's testimony. You had Brewer's testimony. You had the testimony of Muriel Brewer, who didn't see the shooting, but she saw the defendant in her home minutes earlier. So there is absolutely no question that it was the defendant who committed the murder. And in the face of that, the fact that defendant told police when he first was arrested his name was Cortez, it pales in significance. And I would add to that that when he told police that and they confronted him with a picture, he laughed. So he didn't act like someone who committed a murder, and he apparently didn't think it was serious. So the evidence, the statements that the defendant would want to suppress really are minimal and would have had absolutely no effect. It's not even arguable. Moving on to the second claim, this one is barred by res judicata. On direct appeal, the defendant claimed that defense counsel failed to, was ineffective because she failed to make optimal use of the conflicts of the evidence, referring to Butler and referring to Brewer. And now this claim arises once again before the court that the court should have called Aaron Wells to corroborate Brewer's admission that he said he never saw a defendant shoot George. These claims are obviously the same in substance. This court has already addressed the issue. This court has found, and defendant mentioned this morning, that the jury took time to come to its verdict. They didn't just take time. I thought they sent notes out saying they were having difficulty reaching a verdict. Yes, and this court and your honors have seen this case before, and you said on direct appeal, defense counsel ably cross-examined each of the three lay witnesses, and this court said the difficulty the jury may have experienced in assessing the evidence does not equate with the evidence being close. This court said the evidence was not close in our judgment. Neither Butler nor Brewer ever wavered in their testimony that it was the defendant who killed Grover George. So as I said, this claim is barred by res judicata because this court has addressed the substance of Brewer's testimony before. But even if the court decides to overlook the res judicata, it can't be said that defense counsel was ineffective with regard to Aaron Wells. This evidence, her testimony, is completely cumulative to what Brewer testified. He fully admitted at trial that there were, he told police different stories, and he told the jurors why, and his story why made absolute sense, that he was torn in his loyalties, that he was conflicted about what to do, and he finally decided that he'd rather tell the truth than have people mad at him for a lie. So he explained that to the jurors, and you don't need Aaron Wells to say that he told conflicting stories because he said that himself. So her testimony would have been totally cumulative, and it is certainly well settled that an attorney is not ineffective in choosing not to present cumulative evidence. And for the same reasons, it can't be said that defense counsel, that the case of the, that the result of the trial would have been different with the admission of this testimony, because for the reasons I just said, the jurors already knew from the horse's mouth, so to speak, that Brewer was inconsistent. And they determined their verdict was that nonetheless, his testimony combined with Butler's absolutely established the defendant's guilt without a reasonable doubt. The defendant cites Tate in support of the evidence that Wells should have been called to testify, but in that case, the defendant failed to call three alibi witnesses. It wasn't cumulative testimony. The defendant cites Cabrera. In that case, the defense counsel failed to call two exculpatory witnesses. Aaron Wells' testimony would not have been exculpatory here. Both of the claims defendant has raised this morning are based on an indisputably meritless legal theory, and we therefore ask that the court affirm the dismissal of defendant's post-conviction petition. Thank you. Thank you. Rebuttal. Just a few things. With regard to the forfeiture argument that the State just made, they say to Petrenko, but I think Petrenko is distinguishable. In Petrenko, the Illinois Supreme Court specifically pointed out that the particulars were not in the petition. Here, if you read Douglas' petition, he says that there were incriminating statements, and immediately after that refers to the detective's testimony about what he said after he said what his supposed name was and what happened on the street, whether he knew the street or the people. Those are specific, and again, we have a pro se defendant. And like you said, it is the job of appellate attorney and second stage attorney to then look at the petition and form a better argument, a more artful argument. It is in there. It's particular, as opposed to Petrenko where it was not. Moving to a legally meritless claim, the State cites to English, and English again is distinguishable. That is a third stage case where whether or not these witnesses ever said anything to the lawyer came out at an evidentiary hearing. We are not at that point. We're at the first stage. We're just trying to get appointment of counsel to see if it can make it to third stage. And then counsel argues that a motion to suppress would not have been granted. Again, we're at the first stage, and our job here is to review whether or not there's an arguable basis for a claim, not the ultimate validity of the claim. And I would then argue that, you know, saying that there's no prejudice. Well, what about, yeah, the prejudice is the big one. Yes. Because that's the one that I thought we addressed the first time around. Right. And we found the evidence not close. We found that it was a case of this person being clearly guilty. I think there's a difference between this court finding on direct appeal that the evidence was not close for plain error analysis and finding that, you know, this evidence, maybe if it was put before the jury, we don't know what their hangup was, what they had a problem with the evidence. It may have swayed them one way or another, and I think that's different than saying that it's overwhelming evidence, that there was no prejudice. We just need to argue that it's arguable that this could have had an effect on the jury's outcome. And then moving to the Aaron Wells affidavit, the state argues that it was barred by race judicata. Again, this is a different claim. Arguing on direct appeal that counsel did not make the most ultimate use of the inconsistencies between Brewer and Butler is certainly different than saying counsel did not bring forward a witness who would have impeached one of these people. That's different than saying, you know, closing argument was not strong enough because the inconsistencies were not highlighted. So race judicata does not apply. And then finally, the argument about cumulativeness. That's also not the case. Aaron Wells' affidavit not only says that Thomas Brewer told her that he did not see the offense. It also adds the fact that she says that he told her that he was never afraid for their children. And if you're a jury and you're listening to this and you're thinking, why should I believe this person? Why should I believe him now when before he said that he gave a completely different story about not seeing the offense? You're going to take it to heart that he says, I was afraid for my children. And then the mother of these children come forward and say that that was never the case. It's not cumulative. It's not in the trial record. And certainly this was something that the jury should have heard. Thank you. Well, thank you very much. You guys did a terrific job in the briefs and very good oral arguments. And we'll take the case under advisement.